IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

RUTH A. WOODALL,                    )
                                    )
              Plaintiff,            )
                                    )
v.                                  )    Case No. CIV-12-099-RAW
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security Administration,            )
                                    )
              Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Ruth A. Woodall (the "Claimant") requests judicial

review of the decision of the Commissioner of the Social Security

Administration (the "Commissioner") denying Claimant's application

for disability benefits under the Social Security Act.  Claimant

appeals the decision of the Administrative Law Judge ("ALJ") and

asserts that the Commissioner erred because the ALJ incorrectly

determined that Claimant was not disabled.   For the reasons

discussed below, it is the recommendation of the undersigned that

the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the

"inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 7, 1961 and was 45 years old at the time of the ALJ's decision. Claimant completed her high school education and training as a licensed practical nurse ("LPN"). Claimant has worked in the past as an LPN. Claimant alleges an inability to work beginning July 30, 2003 due to limitations

resulting from fibromyalgia, rheumatoid arthritis, and right foot problems.

## Procedural History

On December 27, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 5, 2007, the ALJ assigned to this case issued an unfavorable decision which was not reviewed by the Appeals Council. On appeal to this Court, the ALJ's decision was reversed and remanded on February 9, 2009 with a directive to re-evaluate Claimant's credibility and make any appropriate adjustments to Claimant's RFC.

After remand by the Appeals Council, a second unfavorable decision was entered by the assigned ALJ on January 14, 2010. Again, the decision was appealed to this Court resulting in another reversal and remand on March 31, 2011. In that opinion, this Court found the ALJ repeated the same error by failing to properly evaluate Claimant's credibility and to include a component for fibromyalgia in his RFC assessment.

After remand by the Appeals Council, the case was assigned to ALJ Osly Deramus who conducted an administrative hearing on

September 13, 2011.  The ALJ issued a third unfavorable decision on
November 23, 2011.  The decision of the ALJ represents the
Commissioner's final decision for purposes of further appeal.  20
C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential
evaluation.  He determined that while Claimant suffered from severe
impairments, she did not meet a listing and retained the residual
functional capacity ("RFC") to perform a full range of sedentary
work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in:  (1) failing to
give Claimant's treating physician's opinion controlling weight;
and (2) engaging in a faulty credibility analysis.

## Consideration of Treating Physician's Opinion

Claimant contends the ALJ failed to give the opinion of his
treating physician, Dr. Thomas Conklin, Jr., controlling weight.
In his decision, the ALJ determined Claimant suffered from the
severe impairments of fibromyalgia and right clubfoot.  (Tr. 343).
Some question arose as to whether Claimant engaged in substantial
gainful activity ("SGA") after the alleged onset date, but the ALJ
concluded that any work activity did not rise to the level of SGA.

(Tr. 343). He further found Claimant retained the RFC to perform sedentary work except that she can only occasionally stoop, crouch, crawl, kneel, and/or balance and can never climb and must avoid heights and dangerous moving machinery. (Tr. 346). While Claimant was found to be unable to perform her past relevant work at step four, the ALJ determined Claimant could perform the representative jobs of appointment clerk at step five, based upon the testimony provided by a vocational expert. (Tr. 353).

On January 3, 2005, Dr. Conklin completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Dr. Conklin found Claimant could sit continuously for 15 minutes and cumulatively for 3 hours in an 8 hour workday, stand for 15 minutes continuously and for 2 hours in an 8 hour workday, and walk continuously for 30 minutes and for 2 hours in an 8 hour workday. Dr. Conklin also estimated Claimant could occasionally lift up to 10 pounds and carry 5 pounds. (Tr. 192). Dr. Conklin determined Claimant could not engage in simple grasping, pushing or pulling or fine manipulation in her right hand or fine manipulation in her left hand. Claimant could never squat, crawl, climb, crouch or kneel. She could not be exposed to unprotected heights, be around moving machinery, exposed to marked temperature changes, drive automotive equipment, be exposed to dust, fumes, or gases or be

6

exposed to noise. (Tr. 192). Dr. Conklin referred to objective signs of Claimant's pain as redness, joint deformity, and muscle spasms. Id. He considered her pain to be "moderate." She was in need of taking unscheduled breaks and was likely to experience bad days, requiring absence for more than 4 days per month. (Tr. 193).

On June 9, 2011, Dr. Conklin completed a second Medical Source Statement on Claimant. At that time, he found Claimant could sit and stand for 15 minutes at one time and 2 hours out of an 8 hour workday and walk for 20 minutes at one time and 3 hours out of an 8 hour workday. He determined Claimant could occasionally lift and carry up to 5 pounds. (Tr. 414). Dr. Conklin opined Claimant could not push or pull or engage in fine manipulation with either hand. Claimant could not use either foot for repetitive movements, with a notation the Claimant was "unable to drive." Claimant could not squat, crawl, stoop, crouch, or kneel. The same exposure as set forth in the prior statement remained in effect at this time. Claimant's pain level was maintained at "moderate." (Tr. 415). Unscheduled breaks and absences from work were still necessary. Claimant was also required to elevate her feet and alternate sitting, standing, and walking at will. (Tr. 416).

The ALJ related Dr. Conklin's findings in his decision, concluding that his opinion would "in effect, limit claimant to bed

rest."   The ALJ found Dr. Conklin's disability statement was "markedly inconsistent" with his treatment records.   (Tr. 347). The ALJ stated that although Claimant alleges she became disabled on July 30, 2003, she sought little medical treatment from that point forward with Dr. Conklin.   Id.   As an example of inconsistency, the ALJ cites to the fact Dr. Conklin found Claimant was limited in her exposure to dust, fumes and gases when he had previously received an "unremarkable" radiogram of Claimant's lungs with no evidence of pneumonia, atelectasis, or effusions.   (Tr. 348).   Dr. Conklin also notes that Claimant complained of pain and swelling in her hands in November of 2004 but Dr. Conklin made no findings of the same.   Additionally, the ALJ states there is no mention of fibromyalgia until January of 2005 - some 2 1/2 years after she allegedly became disabled.   Id.

The ALJ also references that Dr. Conklin made no credible findings to support his disability opinion.   Although he cited redness, joint deformity, and muscle spasms in his Medical Source Statement, his then-most recent progress notes did not make the same findings.   Id.   The ALJ noted the conflict with the report of Dr. Ravinder Kurella with Dr. Conklin as to the presence of swelling where it was found Claimant's "right foot is slightly smaller than the left foot.   The foot is slightly medially rotated.

There is no swelling noted." (Tr. 142).

Additionally, an RFC assessment by a DDS physician on December 16, 2005 indicates Claimant could occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds, stand, walk, and/or sit for up to 6 hours in an 8 hour workday and engage in unlimited pushing and pulling. Claimant was found to be full range of motion of the neck, bilateral hip joints, and full range of motion of shoulder, elbow and wrist joints, negative straight leg raising, weak foot on the right side but normal on the left, tenderness in the lumbar region, normal gait, heel walking, and toe walking with some weakness on the right side. (Tr. 181). While Claimant was found to never be able to climb, balance, or stoop, no other restrictions were noted. (Tr. 182). This assessment also conflicts with Dr. Conklin's findings.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ exhaustively set out the basis for discounting Dr. Conklin's opinions, citing to the Watkins factors and tying those factors to the inconsistencies in the medical record and the lack of objective supporting medical findings. This Court finds no error in the ALJ's analysis in this regard.

## Credibility Analysis

Although the ALJ employed somewhat boilerplate language in his assessment of Claimant's credibility, Claimant's arguments against the assessment go more towards a criticism of the evaluation of Dr. Conklin's opinions rather than arguing support for Claimant's testimony. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily

activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds no error in the credibility analysis performed by the ALJ. He provided good and sufficient reasons for giving Claimant's subjective statements less weight.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing

reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of January, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

13